# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **DARRELL G. HAFEN,**<br><br>    Plaintiff,<br><br>v.<br><br>**KEVIN CARTER, Director of SITLA; and MICHAEL MORRIS, Chairman of SITLA,**<br><br>    Defendants. | REPORT AND RECOMMENDATION<br><br>Case No. 2:06-cv-00989-TC-PMW<br><br>Chief District Judge Tena Campbell<br><br>Magistrate Judge Paul M. Warner |

This case was referred to Magistrate Judge Paul M. Warner by Chief District Judge Tena Campbell pursuant to 28 U.S.C. § 636(b)(1)(B).[1] As a preliminary matter, the court notes that Plaintiff is proceeding pro se. Accordingly, the court will construe his pleadings liberally. *See Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003).

## PROCEDURAL HISTORY

On November 28, 2006, the court granted Plaintiff's application to proceed in forma pauperis under 28 U.S.C. § 1915 (the "in forma pauperis statute").[2] That same day, Plaintiff's

---

[1] *See* docket no. 40.

[2] *See* docket no. 2.

complaint was filed in the court docket,[3] along with his motion for a temporary restraining order ("TRO")[4] and his motion for service of process.[5]

In a memorandum opinion and order filed on December 26, 2006, the court dismissed Plaintiff's complaint, motion for a TRO, and motion for service of process.[6] The court correctly noted that Plaintiff's complaint and motions sought to prevent the State of Utah School and Institutional Trust Lands Administration ("SITLA") from proceeding with a meeting scheduled for November 30, 2006. The court concluded that because the date for that meeting had already passed, the relief sought by Plaintiff's complaint and motions had been rendered moot.

On the same day the court's memorandum opinion and order was filed, Plaintiff attempted to file an amended complaint with the court.[7] However, because his original complaint had been dismissed and the case had been closed, Plaintiff's amended complaint was filed in the court docket as a lodged document, not as an amended complaint.[8]

During the next several weeks, Plaintiff filed multiple motions. On January 9, 2007, Plaintiff filed a "Motion for Discovery."[9] On January 16, 2007, Plaintiff filed a "[m]otion for

---

[3] *See* docket no. 3.

[4] *See* docket no. 4.

[5] *See* docket no. 5.

[6] *See* docket no. 13.

[7] *See* docket no. 14.

[8] *See id*.

[9] Docket no. 16.

clarification [a]nd issuance of orders [f]or TRO and [d]iscovery."[10] On January 24, 2007, Plaintiff filed a motion for reconsideration of the court's December 26, 2006 memorandum opinion and order.[11] On February 6, 2007, Plaintiff filed a "[m]otion for status hearing."[12]

On February 9, 2007, the court issued a second memorandum opinion and order denying all of the motions identified in the previous paragraph.[13] The court also concluded that it would not accept Plaintiff's amended complaint because it was filed after this case had been closed and had other procedural defects.

On March 14, 2007, Plaintiff filed a motion for reconsideration of the court's February 9, 2007 memorandum opinion and order.[14] The court denied that motion in an order dated March 22, 2007.[15]

Plaintiff then filed an appeal with the Tenth Circuit Court of Appeals (the "Tenth Circuit") on May 16, 2007.[16] After considering his appeal, the Tenth Circuit issued an order and judgment on September 10, 2007, in which it vacated the district court's rulings and remanded

---

[10] Docket no. 17.

[11] *See* docket no. 18.

[12] Docket no. 19.

[13] *See* docket no. 20.

[14] *See* docket no. 21.

[15] *See* docket no. 22.

[16] *See* docket no. 25.

the case for the district court to consider Plaintiff's amended complaint.[17] The Tenth Circuit held that remanding for consideration of Plaintiff's amended complaint was required for two reasons. First, the Tenth Circuit concluded that when the district court denied Plaintiff leave to amend his complaint because this case was closed, it did so based on "an erroneous view of the law."[18] Second, the Tenth Circuit determined that "[w]hile the relief requested in [Plaintiff's] original complaint was undoubtedly moot given the limited request to halt the November 30 meeting, . . . the request for broader relief contained within the amended complaint—namely that [Plaintiff] be granted a right to attend any future SITLA meeting—cures the deficiency identified in the district court's memorandum opinion and order."[19] The Tenth Circuit recognized that the district court had "also refused to accept the amended complaint on the basis of unspecified procedural defects."[20] However, because "those defects [were] not identified," the Tenth Circuit determined that "the better course" would be for the district court to identify those defects to provide Plaintiff with an opportunity to cure them.[21] While the Tenth Circuit vacated the district court's rulings, it also noted that it "express[ed] no opinion regarding any other potential grounds for dismissal or whether [Plaintiff] has any right to attend SITLA meetings."[22]

---

[17] *See* docket no. 37.

[18] *Id*. at 6.

[19] *Id*. at 6-7.

[20] *Id*. at 7.

[21] *Id*. at 7.

[22] *Id*. at 7 n.1.

On remand, the district judge to whom this case was assigned prior to Plaintiff's appeal entered an order of recusal, and this case was reassigned to Chief Judge Campbell.[23]  Since the date of the Tenth Circuit's order and judgment, Plaintiff has filed (1) a notice with the court indicating that he intends to hire counsel to represent him in this case,[24] (2) a "Motion for Guideline Hearing on Discovery and Witnesses,"[25] (3) two motions to refer this case to alternative dispute resolution ("ADR"),[26] and (4) a request for a hearing on his two motions to refer this case to ADR.[27]

## FACTUAL BACKGROUND[28]

According to Plaintiff, he entered into a contract to purchase a large parcel of land (the "10,000 acres") from the State of Utah to be used for development purposes.  Plaintiff also purportedly entered into a contract with an individual to purchase a parcel of land adjacent to the 10,000 acres.  Within a short period of time after entering into that contract with the individual, however, the individual demanded that Plaintiff "pay him twice the price he had agreed to sell for."  If Plaintiff was unwilling to meet that price, the individual threatened to shoot Plaintiff.

---

[23] *See* docket no. 38.

[24] *See* docket no. 35.

[25] Docket no. 36.

[26] *See* docket nos. 39, 41.

[27] *See* docket no. 42.

[28] This factual background has been assembled from several of Plaintiff's filings.  *See* docket nos. 3, 4, 14, 41.

Because Plaintiff knew this individual to have a history of violence, Plaintiff did not purchase the land from the individual.  Apparently because he did not purchase the parcel adjacent to the 10,000 acres, Plaintiff was forced to call the "land board" and "put the contract on hold" to purchase the 10,000 acres from the State of Utah.  Plaintiff contends that he was forced to wait to bring this suit until the above-referenced individual and that individual's three sons had all died.  Because those four individuals allegedly are now deceased, Plaintiff initiated this case.

Plaintiff also claims that during a special session of the Utah Legislature held in Saint George, Utah, he was allowed to speak and he made clear his intention "build a solar city" on another large parcel of land known as "the south block."

Sometime in 2006, Plaintiff learned that the State of Utah, through SITLA, intended to use or sell the 10,000 acres and the south block.  SITLA allegedly scheduled a meeting on November 30, 2006, to discuss the intended use or sale of the 10,000 acres and the south block.  Plaintiff apparently contacted SITLA about speaking at that meeting, but Defendants allegedly prevented Plaintiff from doing so.

In his amended complaint, Plaintiff alleges that SITLA is "violating the [F]irst and [F]ourth Amendments to the U.S. Constitution," "Article I of the Utah [C]onstitution," the Fifth Amendment "dealing with due [p]rocess," his civil rights, and "the Pledge of Allegiance dealing [w]ith liberty and justice for all."  Plaintiff references "a conspiracy [b]y SITLA and unnamed conspirators."  Plaintiff asserts that SITLA and those conspirators have "destroyed" his contract for the 10,000 acres and taken the south block away from him.  The only relief Plaintiff has requested, however, is that he be allowed to attend any future SITLA meeting concerning the

10,000 acres and the south block or, alternatively, that SITLA be prevented from holding any meetings or making any decisions concerning the 10,000 acres and the south block.

Attached to his amended complaint, Plaintiff has included a document entitled, "Statement to Board of Trustees of SITLA." In that statement, Plaintiff makes the following assertions in support of his allegations against SITLA:

- "[This matter] could have been easily solved with intelligent cooperation, but I have enough evidence to support my position from former Governor Rampton, [former Governor] Leavitt[,] and other governors."

- "I have spoken of the fact that I was in an automobile accident in 1962 where a man was killed on a motorcycle[,] and I was falsely accused of killing him. He was trave[ling] on a motorcycle that was unregistered and unlicensed and had no right to be on the highway, and I testified to his parents that he had as much chance as I did to avoid the accident, but he did not react and drove into the side of my car. At the time I was 36 years of age and did [n]ot have on my record even a moving violation. Imagine the trauma. For six years prior to the accident[,] I was forced to[ ]make numerous trips up and down the state trying to find a solution to the unconstitutional eminent domain proceeding that was brought against me and my wife by St[.] George that was holding up my golf course project."

- "Before I left [the SITLA] office[,] Mr. Ron Burton of the Attorney General[']s Office falsely accused me of not having a driver's license. That is another false accusation[.] He seems to forget that I have been forced to travel over the years to find answers."

- "[F]or SITLA to have a law enforcement officer . . . confront me is a bit much. That also indicates a conspiracy."

Attached to his October 31, 2007 motion for ADR, Plaintiff has included a document entitled, "Notice of [C]ondition to the Court," in which he makes the following statements:

- "This is to notify the court that since I notified the court of a notice of possible Alzheimer's because of memory loss[,] I have made an appointment with the Veterans Hospital . . . for a complete diagnosis of my [c]ondition."

- "I recently notified [my employer] of my taking a leave of absence to travel to California [t]o work with Gov[.] Schwarzenegger on the California wildfires for assistance [f]or the victims. I have met with his staff and also the staff of [S]an [D]iego City, and have received an enthusiastic reception. There are matters I have worked [o]n over the years in water and power that can be helpful to them, and also to the [v]ictims. I have a personal relationship with Gov[.] Schwarzenegger, and this could [m]ean a whole new direction—not only with [another case filed by Plaintiff in this court], [b]ut my ability to help all the west in water and power. Just this week, the U.S. Coast Guard announced they were establishing a base at Point Barrow in Alaska, to deal [w]ith the Bering Straits problem with the Russians and to determine territory [t]o be decided by a UN panel as to Russia's and the U.S.[']s [i]nterests. I know this [i]s difficult for Judge Warner to understand because on the surface it appears [d]elusional, but it is part of all the work that has been brought on as a result [o]f the Mayor in St[.] George inflicting damages on me and my family and as a result I have pursued many objectives to get back to my work in W[a]shington County."

- "A long time ago, when St[.] George [t]ook our water without [c]ompensation and killed our golf course project[,] I resolved to keep the water company [f]ree from debt and purs[ue] objectives until God opened a door, and that day is here. I [t]rust the [c]ourt will eventually come down on God's side. It was not planned this [w]ay but that is how it has developed."

- "P.S.  This past week, Admiral Brooks of the U.S. Coast Guard flew a reconnaissance mission from Point Barrow to the North Pole to establish USA sover[e]ignty in the Arctic."

## ANALYSIS

Whenever the court authorizes a party to proceed without the prepayment of fees under the in forma pauperis statute, the court is required to "dismiss the case at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious."  28 U.S.C. § 1915(e)(2)(B)(i).  The United States Supreme Court has construed the term "frivolous" within the context of the in forma pauperis statute by stating that

> a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact. . . . [The in forma pauperis statute]'s term "frivilous," when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation.

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The in forma pauperis statute

> accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. . . . Examples of the latter class are claims describing fantastic or delusional scenarios . . . .

*Id*. at 327-28; *see also Hall v. Bellmon*, 935 F.2d 1106, 1108-10 (10th Cir. 1991).

The court has determined that Plaintiff's pleadings fall squarely within the second of those two categories because the factual allegations contained in his pleadings "rise to the level of the irrational or the wholly incredible," *Denton v. Hernandez*, 504 U.S. 25, 33 (1992), and describe "fantastic or delusional scenarios."  *Neitzke*, 490 U.S. at 328.  Plaintiff's pleadings are

replete with incredible and fantastic factual allegations that have little or no relation to his asserted legal claim. Further, it appears that most, if not all, of those allegations have little or no basis in fact.

Plaintiff's pleadings demonstrate that he may be suffering from memory loss or some other psychological problems, and the court is sympathetic to Plaintiff's unfortunate circumstances. These circumstances, however, have no effect on the court's duty under the in forma pauperis statute to dismiss Plaintiff's amended complaint once the court has determined that it is frivolous.

Based on the foregoing, the court concludes that Plaintiff's amended complaint is frivolous under the in forma pauperis statute and, therefore, should be **DISMISSED**. *See* 28 U.S.C. § 1915(e)(2)(B)(i); *Denton*, 504 U.S. at 33; *Neitzke*, 490 U.S. at 325-28; *Bellmon*, 935 F.2d at 1108-10.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. The parties must file any objection to this Report and Recommendation within ten (10) days after receiving it. Failure to object may constitute waiver of objections upon subsequent review.

DATED this 21st day of November, 2007.

BY THE COURT:

/s/ Paul M. Warner

PAUL M. WARNER
United States Magistrate Judge